# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 16, 2012                    Decided June 8, 2012

No. 11-7084

NB, BY HER PARENT AND NEXT FRIEND, MICHELLE PEACOCK,
ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01511)

———

*Bruce J. Terris* argued the cause for appellants. With him on the briefs were *Kathleen L. Millian*, *Jane M. Liu*, and *Jane Perkins*.

*Rochelle Bobroff* was on the brief for *amicus curiae* Legal Aid Society of the District of Columbia, et al., in support of appellants.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor

General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: TATEL and KAVANAUGH, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Five Medicaid recipients filed this class action against the District of Columbia, alleging that the District systematically denies Medicaid coverage of prescription medications without providing the written notice required by federal and D.C. law. The district court dismissed the case on the pleadings, concluding that plaintiffs lacked standing to pursue their claims for injunctive and declaratory relief. Because we believe that the facts alleged in the complaint are sufficient to establish standing, we reverse.

**I.**

Medicaid is a "cooperative federal-state program that provides federal funding for state medical services to the poor." *Frew v. Hawkins*, 540 U.S. 431, 433 (2004). States electing to participate in Medicaid must comply with requirements imposed by federal law. *Id.* As relevant here, federal regulations mandate procedural protections for Medicaid recipients, including provision of written notice "[a]t the time of any action affecting [a Medicaid recipient's] claim." 42 C.F.R. § 431.206(b), (c)(2). Such notice must contain a statement of what action the state intends to take, the reasons for that action, the specific regulations supporting the action, the individual's right to a hearing, and an explanation of the circumstances under which coverage will be continued if a hearing is requested. *Id.* § 431.210. District of Columbia law imposes the same requirements. D.C. Code § 4-205.55.

In the District, the Department of Health Care Finance (DHCF) implements much of the Medicaid program, including prescription drug coverage. As permitted under federal law, DHCF places restrictions on the medications covered by Medicaid. In particular, for certain medications—including medications not on DHCF's Preferred Drug List, medically necessary brand-name medications with generic equivalents, and medications with quantity limits—DHCF imposes a prior authorization requirement, meaning that the prescribing physician must obtain approval from DHCF before it will cover the prescription. *See* ACS Solutions Center, District of Columbia Pharmacy Benefits Management Prescription Drug Claims System (X2) Provider Manual Version 0.09, at 8, 11–12, 15 (2012), *available at* http://www.dcpbm.com/documents/DC%20MAA%20Provide r%20Manual%20v9.pdf; *see also* 42 U.S.C. § 1396r-8(d)(1)(A), (d)(5) (permitting prior authorization programs, subject to certain requirements). According to the allegations in the complaint, DHCF contracts with a company called Affiliated Computer Services, Inc. (ACS) to process claims for prescription drug coverage using an electronic claims management system. Compl. ¶ 29. Under this system, when a Medicaid recipient presents a prescription to a pharmacy, the pharmacy submits an electronic claim to ACS, and ACS immediately provides an automatic reply indicating whether Medicaid will cover the prescription. If coverage is denied, ACS gives the pharmacy a "rejection code" identifying the reason for the denial. *Id.* at ¶ 30.

Plaintiffs allege that the District, in violation of both federal and D.C. law, systematically fails to provide Medicaid recipients with timely and adequate written notice of the reasons for prescription coverage denials or reductions, the right to request a hearing, and the circumstances under which coverage will be reinstated if a hearing is requested. Deprived

of these procedural protections, plaintiffs claim they have no opportunity to prevent or challenge denials or reductions of coverage or to obtain reinstated coverage pending appeal. This, they argue, leaves them with two choices: (1) forego medically necessary prescriptions, at least temporarily, or (2) pay for the prescriptions with money needed for other life necessities. In their complaint, plaintiffs recount multiple instances in which they were denied prescription coverage without written notice of either the reason for the denial or their procedural rights. In some cases, plaintiffs allege, they had to pay out-of-pocket in order to obtain necessary medications; in other cases, they were eventually able to obtain their medication at a different pharmacy or at a later date. Plaintiffs seek no compensation for either the expense or inconvenience caused by DHCF's failure to provide adequate notice. Instead, they request declaratory and injunctive relief requiring the District to provide the procedural protections that they claim are mandated by statute and by the Due Process Clause.

The district court dismissed the complaint, finding plaintiffs lacked standing to seek such relief. In its view, because "in many of the instances alleged by plaintiffs, they were, in fact, ultimately able to obtain their prescriptions at no cost," there was "no injury." *NB v. District of Columbia*, 800 F. Supp. 2d 51, 56 (D.D.C. 2011). And though acknowledging that "plaintiffs may have suffered a cognizable injury based on the various out-of-pocket expenses incurred after being denied coverage," the district court concluded that these injuries were neither traceable to defendants nor likely to be remedied by a favorable ruling. *Id.* at 57. Our review is de novo. *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011) ("We review *de novo* the district court's dismissal for lack of standing[.]").

## II.

Several well-accepted principles of standing govern our review of the district court's decision. As we have explained, "[t]he mere violation of a procedural requirement . . . does not permit any and all persons to sue to enforce the requirement." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc). Our jurisdiction is limited to "actual cases or controversies between proper litigants," and if this suit is to proceed, plaintiffs must demonstrate that they have "constitutional standing to invoke the authority of an Article III court." *Id.* at 661. As the Supreme Court explained in *Lujan v. Defenders of Wildlife*, to establish constitutional standing, plaintiffs must satisfy three elements: (1) they must have suffered an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) the injury must be "fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." 504 U.S. 555, 560–61 (1992) (alteration, omission, and internal quotation marks omitted). Where, as here, plaintiffs seek to enforce procedural (rather than substantive) rights, they must establish that "the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing." *Id.* at 573 n.8. Once plaintiffs establish that a law "accord[s] a procedural right to protect [their] concrete interests," however, they "can assert that right without meeting all the normal standards for redressability and immediacy." *Id.* at 572 n.7; *see also Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) ("Where plaintiffs allege injury resulting from violation of a *procedural* right afforded to them by statute and designed to protect their threatened concrete interest, the courts relax—while not wholly eliminating—the issues of imminence and redressability[.]"). In assessing plaintiffs' standing, "we must

assume they will prevail on the merits" of their claims, *LaRoque*, 650 F.3d at 785—in this case, that the Constitution, federal regulations, and D.C. law require written notice when DHCF denies coverage of prescription medications. Moreover, because the district court dismissed the complaint at the pleadings stage, "the burden imposed" on plaintiffs to establish standing "is not onerous," *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011), and "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

This case turns primarily on the injury element of standing. Because plaintiffs seek only forward-looking injunctive and declaratory relief, "past injuries alone are insufficient to establish standing," and plaintiffs must show that they "suffer[] an ongoing injury or face[] an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). As the District points out, none of the plaintiffs expressly allege an imminent threat of future injury in the complaint. This failure, however, is not by itself fatal. In reviewing a motion to dismiss, we "treat the complaint's factual allegations as true . . . and must grant [plaintiffs] the benefit of all inferences that can be derived from the facts alleged." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 216 (D.C. Cir. 2010) (omission in original) (internal quotation marks omitted). The question, then, is whether the complaint contains facts that, viewed in the light most favorable to plaintiffs, establish an imminent threat of injury. At least with regard to one plaintiff, John Doe, the facts alleged satisfy this standard. *See Comcast Corp. v. FCC*, 579 F.3d 1, 6 (D.C. Cir. 2009) ("[I]f one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case." (internal quotation marks omitted)).

As an initial matter, Doe alleges past injuries that quite clearly constitute injury in fact. The procedural rights at issue are undoubtedly "designed to protect some threatened concrete interest of his," *Lujan*, 504 U.S. at 573 n.8, namely his interest in timely receiving the Medicaid prescription drug benefits to which he is entitled. As amici curiae explain, DHCF's alleged failure to provide adequate notice describing the reasons for coverage denials, the right to a hearing, and the potential for reinstatement of coverage pending appeal "can prevent a beneficiary from receiving essential medications indefinitely, or at least for some period of time while the individual tries to remedy the cause of denial without adequate information." Legal Aid Soc'y et al. Amicus Br. 12. Moreover, even if recipients are able to pay out-of-pocket for medications, such payments "can result in financial harm to a population acutely vulnerable to such injury." *Id.* Alleging just such an injury, Doe explains that when DHCF denies coverage, his mother has to pay out-of-pocket for his medications, "typically" causing her to "forego paying a bill or another necessary living expense in order to buy the medication." Compl. ¶ 74. Doe also alleges instances in which his mother paid for medications in response to coverage denials made without adequate notice and in circumstances where notice of the reasons for the denial would likely have enabled him to remedy the problem and obtain coverage. *See id.* ¶ 73 (explaining that Doe's mother paid $75.99 for a prescribed nasal spray because she was never informed that the prior authorization previously obtained by Doe's physician had expired, triggering the coverage denial); *id.* ¶¶ 63, 65 (describing repeated denials, without explanation, of Doe's prescription for a second inhaler, causing his mother to pay out-of-pocket). We have no doubt that injuries of this sort—that is, procedural violations that threaten an individual's ability to obtain Medicaid

coverage of prescription medications—satisfy the injury element of constitutional standing.

Nor do we doubt that Doe's allegations are sufficient to establish an ongoing or imminent threat of injury. For one thing, the complaint alleges that Doe "*continues to be* denied refills of inhalers" without adequate notice. *Id.* at ¶¶ 69–70 (emphasis added). And even if this ongoing harm were insufficient, Doe also alleges facts that establish an imminent threat of *future* injury. Whether Doe faces such a threat depends upon three contingencies: (1) whether Doe has alleged an ongoing need for prescription coverage; (2) whether he is likely to be denied coverage in the future; and (3) whether DHCF will fail to provide the required notice upon denial.

Doe has clearly alleged the first of these contingencies. According to the complaint, Doe is a disabled Medicaid recipient who "suffers from severe and chronic asthma," as well as other conditions. *Id.* ¶¶ 60, 62, 71–72, 75. To prevent serious asthma attacks, he "must have 2 inhalers every 30 days," *id.* ¶ 63, along with other medications, and the out-of-pocket cost of his prescriptions ranges from "several hundred to over one thousand dollars each month," *id.* ¶ 59. Given this, Doe is virtually certain to need Medicaid prescription coverage on a monthly basis for the foreseeable future.

Doe likewise faces an imminent threat of future coverage denials—the second contingency on our list—as demonstrated by two specific factual allegations. First, the complaint contains statistical evidence suggesting that DHCF denies prescription medication coverage at quite a high rate. Relying on data collected by ACS during an eleven-month period (April 30, 2008 to March 31, 2009), plaintiffs allege that "a significant number of point-of-sale electronic claims

submitted by pharmacy providers are denied on a daily basis." *Id.* ¶ 40. On a single day during that eleven-month period (March 31, 2009), for example, District pharmacies denied nearly half (49.7 percent) of all Medicaid prescription claims. *Id.* And data from the DC Chartered Health Plan, which provides health care for some of the District's Medicaid recipients, showed that in a single month (May 2009), DHCF denied coverage to 32.4 percent of Plan members who presented prescriptions. *See id.* ¶ 41. Of course, as the District points out, we have no way of knowing from these preliminary statistics alone whether these denial rates "relate[] to Medicaid beneficiaries who are in circumstances comparable to these plaintiffs' circumstances." Appellees' Br. 16. But at this stage of the proceedings, we grant plaintiffs the benefit of all reasonable inferences that can be drawn from the facts alleged. Viewed in this light, the complaint in this case fairly shows that Doe will face a relatively high likelihood of denial—possibly ranging from thirty to fifty percent—each time he submits a prescription for coverage. And given that Doe is virtually certain to submit at least one prescription every month, the cumulative chance that he will be denied coverage at some point over the course of a year—or "within some [other] fixed period of time in the future," *Newdow v. Roberts*, 603 F.3d 1002, 1015 (D.C. Cir. 2010) (Kavanaugh, J., concurring in the judgment) (alternation and internal quotation marks omitted)—is likely even higher. *See also Lee v. Weisman*, 505 U.S. 577, 584 (1992) (finding "a live and justiciable controversy" because the alleged injury-causing event was likely to occur at plaintiff's high school graduation, which was several years away when the complaint was filed); *LaRoque*, 650 F.3d at 788 (finding standing where the alleged injury-causing event was 19 months away).

Second, as plaintiffs point out, although "past exposure to illegal conduct does not in itself show a present case or

controversy regarding injunctive relief," "[p]ast wrongs" may serve as "evidence bearing on whether there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (alteration and internal quotation marks omitted). And here, Doe's past experience suggests that coverage denials and reductions are both frequent and recurring. According to the complaint, DHCF first reduced Doe's inhaler coverage in March 2009, when a pharmacist told Doe's mother that Medicaid would no longer cover two inhalers per month, forcing her to pay for her son's second inhaler out-of-pocket. Compl. ¶ 63. Although DHCF resolved this problem for a few months, it recurred in June 2009, and Doe continued to experience problems obtaining coverage for his second inhaler for another eight months until the problem was "fixed" for a second time in February 2010. *Id.* ¶¶ 63, 65. In the meantime, in December 2009, Doe began experiencing coverage denials for *refills* of his inhaler prescription. *Id.* ¶ 66. Although DHCF had previously covered the prescribed number of refills without requiring separate prior authorizations, one pharmacist informed Doe's mother that Medicaid would no longer cover refills unless Doe's physician obtained a prior authorization for each thirty-day supply. *See id.* ¶¶ 66–67. And in May 2010, Doe encountered yet another prior authorization problem when he was denied coverage of a nasal spray prescription, forcing his mother to pay more than $75 out-of-pocket. *Id.* ¶ 73. Because the pharmacy never informed Doe's mother of the reason for the denial, either orally or in writing, she had no way of knowing that coverage had been denied because the medication, which Doe had received on at least five prior occasions without any problem, was subject to a prior authorization requirement and that the existing prior authorization had expired. *Id.*

The District contends that Doe's history of coverage denials actually undermines his claim to standing. Because his coverage problems have been "fixed," the District argues, Doe is unlikely to experience denials in the future. Appellees' Br. 14; Oral Arg. Rec. at 13:03–25. But Doe's experience—especially DHCF's repeated denials of his inhaler prescription for recurring and varying reasons—suggests that, in practice, resolving a denial once does not necessarily make a problem less likely to recur and that DHCF's evolving coverage restrictions can result in denials of prescriptions previously obtained without difficulty. Moreover, given that prior authorizations expire, and, as amici curiae explain, that doctors treating hundreds of patients cannot easily stay abreast of how any given patient is insured and which prescriptions require prior approval, it is far from clear that resolving a prior authorization issue once will make a Medicaid recipient less likely to experience prior authorization-based denials in the future. *See* Legal Aid Soc'y et al. Amicus Br. 15 ("Many physicians care for patients with a wide variety of insurance coverage options and do not know or simply guess at which medication is preferred, and thus available with or without prior authorization, under a given patient's insurance plan."). Indeed, as noted above, the complaint alleges that Doe "continues to be denied refills of inhalers," Compl. ¶ 69, presumably due to continued prior authorization problems (though, of course, without adequate notice, Doe may be unable to determine whether any given denial stems from lack of prior authorization or some other DHCF-imposed restriction). All of this, we believe, is sufficient to show that Doe is likely to be denied coverage in the future.

Finally, the complaint clearly alleges the third contingency required for imminence: that DHCF has a policy of denying prescription coverage without providing the

various forms of notice that plaintiffs claim are required. Specifically, the complaint alleges not only that numerous specific denials of coverage were made without adequate notice, *see id.* ¶¶ 46, 48–49, 53–54, 70, 73, but also that DHCF's guidance and manuals for ACS and pharmacies (obtained by plaintiffs through a freedom of information law request) contain no provisions for giving Medicaid recipients written notice of the reasons for coverage denials, their right to a hearing, or their right to continued coverage pending appeal, *id.* ¶¶ 34–39. In other words, assuming plaintiffs are correct that such notice is required (as we must in evaluating standing), and taking their detailed allegations as true (as we must at this stage), it seems extremely likely that Doe will suffer a procedural injury—and a concomitant threat to his interest in Medicaid prescription drug benefits—if DHCF denies him coverage in the future.

To be sure, these allegations do not add up to absolute certainty. But absolute certainty is not required. Unlike plaintiffs in *Lujan*, Doe, to the extent he has any control over future injury, has alleged not mere " 'some day' intentions" to seek coverage, *Lujan*, 504 U.S. at 564, but an actual, ongoing need for monthly prescriptions paid for by Medicaid. And the probability that Doe will experience future coverage denials, accompanied by deprivations of procedural protections affecting his concrete interest in prescription benefits, is far from speculative. *Compare O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (finding no standing where "the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners"). Given Doe's persistent health problems, he will regularly seek prescription coverage from DHCF and will almost certainly suffer the alleged procedural violations if, as is quite likely, coverage is denied. *Cf. Shays v.*

*FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005) ("[W]hen agencies adopt procedures inconsistent with statutory guarantees, parties who appear regularly before the agency suffer injury to a legally protected interest in fair decisionmaking." (internal quotation marks omitted)). We thus conclude that the facts alleged in plaintiffs' complaint and the reasonable inferences drawn from them establish a " 'likelihood' of injury that rises above the level of 'unadorned speculation' "—that is, a " 'realistic danger' " that Doe will suffer future harm. *See Biggerstaff v. FCC*, 511 F.3d 178, 183 (D.C. Cir. 2007) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988)) (holding that plaintiff had standing to challenge the legality of a defense where plaintiff had encountered the defense in past litigation and alleged that he had refrained from suing other companies who would likely raise the defense).

Having determined that Doe faces an imminent threat of future injury, we find that the remaining two elements of constitutional standing are easily satisfied. With respect to causation, the alleged procedural injury—and the associated threat to Doe's interest in prescription drug benefits—is directly traceable to DHCF's failure to establish policies and procedures for providing the required notices when prescription coverage is denied at the point of sale. Claiming otherwise, the District contends that Doe's injuries are traceable not to DHCF's actions, but instead to the actions of private physicians who failed to obtain required prior authorizations or to Doe's "need for more medication than was allowed by Medicaid rules." Appellees' Br. 27. But these arguments conflate the cause of Doe's coverage denials—such as lack of prior authorization and Medicaid coverage restrictions—with the cause of his alleged injury. For purposes of Doe's standing, it makes no difference that a physician may cause a coverage denial by failing to seek prior

authorization, for the injury he alleges is not the initial denial of coverage, but rather DHCF's failure to provide the information he needs to remedy that denial and obtain medically necessary prescriptions without undue cost or delay. The complaint nicely illustrates just how DHCF's actions cause this type of injury. Had DHCF's policies required pharmacies to provide written notice of the reasons for coverage denials, as Doe alleges the law requires, Doe's mother could have remedied the denial of Doe's nasal spray prescription by contacting Doe's doctor and asking him to obtain the necessary prior authorization. But without such notice, Doe's mother lacked sufficient information to resolve the coverage issue (information she obtained only two months later) and had to pay out-of-pocket for the medication. *See* Compl. ¶ 73.

Finally, the remedy Doe seeks—declaratory and injunctive relief requiring the District to provide Medicaid recipients written notice of the reasons for prescription coverage denials, the right to request a hearing, and the circumstances under which coverage will be reinstated if a hearing is requested—will redress his alleged injuries by ensuring that he receives the information he needs to correct any underlying problems with his coverage in a timely manner. True, notice may not always enable Doe to obtain full and prompt prescription coverage. Some denials may ultimately prove justified and some delay may be inevitable. But a "plaintiff who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered." *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94 (D.C. Cir. 2002). Given this "relax[ed]" standard for redressability in procedural rights cases, *Ctr. for Law & Educ.*, 396 F.3d at 1157, we have no

trouble finding that a favorable decision would redress Doe's injuries.

Satisfied that Doe's allegations sufficiently establish injury, causation, and redressability, we conclude that Doe has standing, at least at this stage of the proceedings, to pursue his claims for injunctive and declaratory relief. Thus having no need to decide whether the other plaintiffs have standing, *see supra* at 6, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*