# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 24, 2015          Decided July 17, 2015

No. 14-7054

NB, BY HER PARENT AND NEXT FRIEND, MICHELLE PEACOCK,
ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01511)

---

*Jane M. Liu* argued the cause for appellants. With her on the briefs were *Bruce J. Terris* and *Kathleen L. Millan*.

*John C. Keeney*, *Jr.* was on the brief for *amici curiae* The Legal Society of the District of Columbia, et al., in support of appellant.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Irvin B. Nathan*, Attorney General at the time the brief was filed, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

2

Before: GRIFFITH and SRINIVASAN, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: The plaintiffs in this case are Medicaid recipients who unsuccessfully sought coverage for prescription drugs. They filed a lawsuit contending that the defendants—the District of Columbia and certain of its officials—unlawfully failed to afford them notice of their entitlement to a hearing before denying their prescription drug claims. They alleged that the lack of notice infringed Title XIX of the Social Security Act and its implementing regulations, the Due Process Clause of the Fifth Amendment of the U.S. Constitution, and D.C. law. The district court dismissed the federal claims, concluding that neither Title XIX nor the Due Process Clause required the written notice the plaintiffs sought. The court also dismissed the claims under D.C. law because jurisdiction over those claims depended on jurisdiction over the dismissed federal claims.

We affirm the district court's dismissal of the Title XIX claims, but we reverse the dismissal of the due process claims and remand for further proceedings. On remand, the district court can reconsider its jurisdiction over the D.C.-law claims in light of our partial reversal.

I.

A.

Medicaid, established under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, is a "cooperative federal-state program that provides federal funding for state medical services to the poor." *Frew ex rel. Frew v. Hawkins*,

540 U.S. 431, 433 (2004).  States participate in Medicaid on a voluntary basis, but states electing to avail themselves of the federal funding available under Title XIX must comply with conditions imposed by federal law.  *Id.*; *see Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2607-08 (2012).  The District of Columbia qualifies as a state for purposes of this litigation.  *See* 42 U.S.C. § 1301(a)(1).

Under federal law, states choosing to participate in Medicaid must provide a core set of mandatory services to qualified beneficiaries.  *See id.* §§ 1396a(a)(10)(A), 1396d(a). For example, state Medicaid plans must provide coverage to qualified beneficiaries for "inpatient hospital services" and "laboratory and X-ray services."  *Id.* §§ 1396a(a)(10)(A), 1396d(a)(1), (3).  In addition to those mandatory services, a state may also elect to cover other categories of services. Those optional services then become part of the state's Medicaid plan, in which event the optional services become subject to the requirements of federal law.  *Doe 1-13 ex rel. Doe, Sr. 1-13 v. Chiles*, 136 F.3d 709, 714 (11th Cir. 1988). Prescription drug coverage is one of those optional services, *see* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(12), and the District has elected to offer coverage of certain prescription drugs under Medicaid.  The District's Department of Health Care Finance (DHCF) implements the prescription drug portion of the District's Medicaid program.  *See* D.C. Code § 7-771.07.

When a state elects to cover prescription drugs, as the District has done, it can limit or condition coverage in certain ways.  First, Title XIX affords participating states some latitude to determine which classes of prescription drugs to cover.  The statute specifies categories of drugs that a state may entirely "exclude[] from coverage."  42 U.S.C. § 1396r-8(d)(2).  Consistent with that authority, the District has opted

categorically to exclude from coverage certain classes of prescription drugs, including, for instance, those prescribed for conditions such as weight loss or erectile dysfunction. *See* D.C. Mun. Regs. tit. 29, § 2706.3(d), (i). The District will cover those drugs only if they have been "specifically placed" on the District's "Medicaid Preferred Drug List." *Id.*; *see* DHFC, Pharmacy Preferred Drug List (PDL) (June 17, 2015), *available at* https://dc.fhsc.com/downloads/providers/ DCRx_PDL_listing.pdf.

Second, for non-excluded drugs, Title XIX enables a state to limit the circumstances under which it will provide coverage. A state may, for example, subject a drug to "prior authorization" requirements. *Id.* § 1396r-8(d)(1)(A). The District has established a prior authorization requirement for certain drugs. Under the District's prior authorization requirement, a prescribing physician must obtain pre-approval from DHCF and submit certain documentation before the District's Medicaid plan will cover the prescription. *See NB ex rel. Peacock v. District of Columbia* (*NB II*), 682 F.3d 77, 80 (D.C. Cir. 2012).

According to the allegations in the complaint, DHCF uses a third-party contractor, Xerox, to process prescription drug claims under Medicaid. When a potential Medicaid claimant presents a prescription to a pharmacist at a Medicaid-participating pharmacy in the District, the pharmacist submits an electronic claim to Xerox. Xerox then provides an immediate computerized reply indicating whether Medicaid will cover the prescription. Xerox determines, among other things, whether the drug is covered by Medicaid or instead is excluded from Medicaid coverage, and whether the patient satisfies all other applicable threshold coverage restrictions (*e.g.*, whether the patient has met any applicable prior authorization requirements). If Xerox determines that all

requirements for coverage are met, Xerox's reply so informs the pharmacist, and the pharmacist fills the prescription. If Xerox determines that coverage should be denied, the patient has the option to pay out-of-pocket for the drugs.

B.

Title XIX and its implementing regulations afford certain procedural protections to Medicaid beneficiaries. The statute provides that a state Medicaid plan "must" provide "for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). "Medical assistance" includes "payment of part or all of the cost" of "prescribed drugs." *Id.* § 1396d(a)(12). Under the statute, consequently, denial of a claim for payment of "prescribed drugs" occasions the grant of an "opportunity for a fair hearing before the State agency."

Regulations implementing § 1396a(a)(3) elaborate on the requirement to give an opportunity for a hearing. Under the regulations, the District must "grant an opportunity for a hearing" to "[a]ny applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness," and also to "[a]ny beneficiary who requests it because he or she believes the agency has taken an action erroneously." 42 C.F.R. § 431.220(a)(1)-(2).

The regulations also specify circumstances in which notice of the right to a hearing must be provided, as well as the content of that notice. In particular, the District

must, at the time specified in paragraph (c) of this section, inform every applicant or beneficiary in writing—

    (1) Of his right to a hearing;

    (2) Of the method by which he may obtain a hearing; and

    (3) That he may represent himself or use legal counsel, a relative, a friend, or other spokesman.

*Id.* § 431.206(b)(1)-(3). Section 431.206(c)—*i.e.*, "paragraph (c) of th[at] section"—sets forth the times when that notice must be afforded to a beneficiary, and requires notice "[a]t the time of any *action* affecting his or her claim." *Id.* § 431.206(c)(2) (emphasis added). And the regulations in turn define "[a]ction" as a "termination, suspension, or reduction of Medicaid eligibility or covered services." *Id.* § 431.201. The regulatory notice requirements thus are triggered by, *inter alia*, a "termination, suspension, or reduction of Medicaid eligibility or covered services."

When § 431.206(b)'s notice requirements come into play because of a termination, suspension, or reduction of Medicaid eligibility or covered services, a separate regulation spells out additional content that must be included in the notice. The District must include: (a) a statement of what action it intends to take; (b) the reasons for the intended action; (c) the specific regulations that support the action; (d) an explanation of the individual's right to a hearing; and (e) an explanation of the circumstances that Medicaid coverage will continue in the interim if a hearing is requested. *Id.* § 431.210(a)-(e).

D.C. law imposes similar requirements. *See NB II*, 682 F.3d at 80 (citing D.C. Code § 4-205.55).

## C.

1. The named plaintiffs in this case are nine D.C. Medicaid recipients. They contend that the District, the Director of DHCF, and the Mayor of D.C. have systematically failed to provide Medicaid recipients with "adequate and timely notice, the opportunity for a fair hearing, and the opportunity for reinstated coverage pending a hearing decision" when denying prescription drug coverage. Pls.' Amend. Compl. ¶ 1. Those actions, the plaintiffs allege, violate Title XIX and its implementing regulations, the Due Process Clause of the Fifth Amendment of the Constitution, and D.C. law. The plaintiffs seek no compensation (although they do ask for costs and attorneys' fees). *Id.* at 49. Instead, they request declaratory and injunctive relief, and also seek certification of a class.

The named plaintiffs allege multiple instances in which their claims for prescription drug coverage have been denied at District pharmacies. The denials, as described in the complaint, appear to have occurred for a variety of reasons. Some plaintiffs were informed that they failed to comply with applicable prior authorization requirements, *see, e.g.*, *id.* ¶¶ 59, 77; others were advised that they were not covered by Medicaid at all, *see, e.g.*, *id.* ¶ 50; and still others were given no reason for the coverage denial, *see, e.g.*, *id.* ¶ 57. The plaintiffs allege that, in all of those circumstances, they did not "receive[] written notice of the fact that coverage of [their] prescriptions was being denied, the reason for the denial[s], the right to appeal, or the circumstances under which Medicaid would continue providing coverage of [their] prescriptions pending the appeal[s]." *E.g.*, *id.* ¶ 98.

2. The plaintiffs filed suit in the U.S. District Court for the District of Columbia, and the district court dismissed the action for lack of Article III standing. *NB v. District of Columbia* (*NB I*), 800 F. Supp. 2d 51, 53 (D.D.C. 2011). On appeal, we found that the plaintiffs had established standing, *NB II*, 682 F.3d at 86-87, and remanded to the district court to proceed to the merits.

On remand, the district court dismissed all claims. *NB v. District of Columbia* (*NB III*), 34 F. Supp. 3d 146, 152 (D.D.C. 2014). In dismissing the claims under Title XIX, the court initially examined circumstances involving denial of prescription drug coverage for failure to demonstrate Medicaid enrollment or to comply with applicable prior authorization requirements. The court concluded that Medicaid's procedural protections—including the notice and hearing sought by the plaintiffs—extended only to those who were in fact enrolled in Medicaid and, as applicable, to those who had met required prior authorization and other applicable threshold criteria. *Id.* at 153-55. As for denials of coverage for other reasons, the court concluded that the plaintiffs had failed to allege that the denials stemmed from government action. In the court's understanding, the plaintiffs' inability to procure coverage for their medications was attributable, not to the District, but instead "to a range of acts or omissions by private actors—including errors or oversights by doctors and pharmacists (and perhaps the patients themselves)." *Id.* The court therefore concluded that the District had no obligation under Title XIX or its regulations to give any written notice of the denials. *Id.* at 155-56.

In dismissing the due process claims, the court again focused initially on denials occasioned by the plaintiffs' alleged failures to demonstrate Medicaid enrollment status or to comply with prior authorization or other coverage criteria.

Those circumstances triggered no protections under the Due Process Clause, the court determined, because the plaintiffs lacked a "legitimate claim of entitlement to the drugs." *Id.* at 157-58. As for the denials of prescription drug claims for reasons other than failure to demonstrate Medicaid enrollment status or to comply with threshold coverage criteria, the court again determined that the plaintiffs failed to allege that any "state action" caused the denials. *Id.* at 158-59. With no federal causes of action remaining in the case, the court then dismissed the D.C.-law claims for lack of pendant jurisdiction. *Id.*

## II.

The plaintiffs contend that Title XIX's implementing regulations entitle Medicaid recipients to written notice of an opportunity for a hearing at which they can challenge the point-of-sale denial of prescription drug benefits. The plaintiffs also claim an entitlement to notice of the reasons for the decision and of the status of their coverage pending a hearing; but those arguments are essentially derivative of their claim to notice of an opportunity for a hearing. *See* 42 C.F.R. § 431.210. We conclude that the regulations afford the plaintiffs no basis for relief. We therefore affirm the district court's dismissal of their Title XIX claims.

## A.

The plaintiffs' argument for relief under Title XIX is that the District "must provide Medicaid recipients with notice of the reason for the denial and the opportunity for a hearing . . . whenever a Medicaid recipient's claim for a prescription drug is denied for any reason." Appellants' Br. 7. That is, the plaintiffs argue that any denial of a claim for prescription drug coverage at a pharmacy triggers a right to

notice under Title XIX. We disagree. Title XIX and its implementing regulations do not afford the plaintiffs the notice they seek whenever a claim for prescription drug coverage is denied.

Under Title XIX, a "[s]tate plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied." 42 U.S.C. § 1396a(a)(3). The District does not dispute that the plaintiffs' claims for prescription drug benefits qualify as "claim[s] for medical assistance" within the meaning of that provision. The District therefore assumes it has an obligation under the statute to afford the plaintiffs "an opportunity for a fair hearing"—*i.e.*, a hearing upon request—to challenge the denial of prescription drug coverage.

Here, however, none of the plaintiffs requested a hearing. And while the statute requires the District to provide for "granting an opportunity for a fair hearing," the statute itself, as the District points out, contains no obligation to afford *notice* of an opportunity to request a hearing. Perhaps for that reason, the plaintiffs do not argue that the statute, of its own force, confers an entitlement to written notice of an opportunity for a hearing. The plaintiffs instead rely on the regulations implementing Title XIX as the source of their alleged entitlement to notice under the Medicaid laws.

Those regulations contain a provision setting forth "[w]hen a hearing is required." 42 C.F.R. § 431.220. Under that regulation, the District "must grant an opportunity for a hearing" to, among others, "(1) [a]ny applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness," as well as "(2) [a]ny beneficiary who requests it because he or she believes the agency has

taken an action erroneously." *Id.* § 431.220(a)(1)-(2). With regard to the second category, the regulations elsewhere define an "[a]ction" as a "termination, suspension, or reduction of Medicaid eligibility or covered services." *Id.* § 431.201. The result is that the District must grant a *hearing* to (1) an applicant whose "claim for services is denied" and also to (2) a beneficiary who believes that he has been subjected to an erroneous "termination, suspension, or reduction" of "Medicaid eligibility or covered services."

A separate set of regulations speaks to the provision of *notice* of the opportunity for a hearing. Significantly, those regulations call for notice only with regard to the second of the above categories of individuals for whom a hearing is available (*i.e.*, persons against whom the District takes an "action" as defined by the regulations), not the first category (*i.e.*, persons as to whom a claim for services is "denied"). To be sure, the regulations governing hearings generally provide that "[t]he hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970), and any additional standards specified in this subpart." 42 C.F.R. § 431.205(d). That provision, however, does not specifically refer to notice. It instead more generally calls for the District to establish a system for hearings that conforms to the requirements of due process. The provision thus ultimately adds little to the plaintiffs' arguments under the Due Process Clause (which we separately consider below).

Under the regulations specifically addressing the provision of notice of an opportunity for a hearing, the requirement to afford notice arises, in relevant part, only "at the time specified in paragraph (c)" of § 431.206. *Id.* § 431.206(b). The referenced "paragraph (c)" in turn calls for the District to provide the mandated notice "(1) [a]t the time that [an] individual applies for Medicaid" and "(2) [a]t the

time of any *action* affecting his or her claim." *Id.* § 431.206(c)(1)-(2) (emphasis added). The plaintiffs make no claim of an entitlement to notice under subparagraph (1). We therefore focus our attention on subparagraph (2), under which notice is required at the time of an "action" affecting a Medicaid beneficiary's claim. Because, as explained, the term "action" means a "termination, suspension, or reduction of Medicaid eligibility or covered services," *id.* § 431.201, the pertinent question is whether any denial of prescription drug coverage at a pharmacy amounts to a "termination, suspension, or reduction of Medicaid eligibility or covered services," *id.*

We think the answer is no. The regulations, as explained, draw a distinction between a person whose "claim for services is *denied*" and a person who "believes the agency has taken an *action* erroneously." *Id.* § 431.220(1)-(2) (emphasis added); *see id.* § 431.200(a)-(b). While both the "denial" of a claim and an "action" affecting a claim (*i.e.*, a termination, suspension, or reduction of Medicaid eligibility or covered services) trigger an "opportunity for a hearing" under the regulations, *id.* § 431.220, the regulations pointedly call for the provision of *notice* of the opportunity to request a hearing only with regard to an "action affecting [a beneficiary's] claim," *id.* § 431.206(c). The regulations contain no such requirement of notice whenever a claim for coverage is "denied."

The distinction drawn by the notice regulations is reinforced by the difference in common understanding between a "denial," on one hand, and a "termination, suspension, or reduction," on the other. In many cases, a denial maintains the status quo; but in all cases, a "termination, suspension, or reduction" *alters* the status quo. That much is evident from the ordinary meanings of the

terms. All that is required for a denial is that a request be turned down or rejected—a decision that, in many cases, will maintain the status quo. But a "termination" is "an act of ending something," *Termination*, Merriam-Webster Dictionary Online, http://www.merriam webster.com/dictionary/termination (last visited June 30, 2015); a "suspension" is the "act of stopping or delaying something," *Suspension*, Merriam-Webster Dictionary Online, http://www.merriam-webster.com/dictionary/suspension (last visited June 30, 2015); and a "reduction" is "the act of making something smaller," *Reduction*, Merriam-Webster Dictionary Online, http://www.merriam-webster.com/dictionary/reduction (last visited June 30, 2015). All of those latter definitions involve a change in, not mere maintenance of, existing conditions.

The procedures governing notice set forth in the regulations cement our understanding that a denial of prescription drug coverage would not generally qualify as a "termination, suspension, or reduction" of covered services. Apart from certain narrow exceptions not in issue here, the regulations provide that, when the District is required to afford notice, it must give notice "at least 10 days before the date of [an] action," 42 C.F.R. § 431.211; *see also id.* §§ 431.213, 431.214—that is, ten days before the date of a "termination suspension, or reduction of Medicaid eligibility or covered services," *id.* § 431.201. That requirement makes sense in the case of a "termination, suspension, or reduction of Medicaid eligibility or covered services" as ordinarily understood: an action that alters the status quo. The advance-notice requirement, however, makes little sense in the context of a garden-variety denial of prescription drug coverage at the point-of-sale in a pharmacy, which need not manifest any alteration of the status quo.

For instance, if the District were set to implement a reduction in the menu of covered services for Medicaid beneficiaries, it could give beneficiaries notice ten days in advance of the "action" it "intends to take" and of the "individual's right to request" a "hearing" in connection with that action. *Id.* § 431.210(a), (d)(1)-(2). By contrast, there would be no way for the District to know ten days in advance that a patient will come to a pharmacy with a prescription but will fail to comply with applicable prior authorization requirements, thereby triggering a denial of coverage. In such a case, it would be impossible for the District to comply with the requirement under § 431.211 to give ten-day advance notice of the opportunity for a hearing. It therefore would make little sense to read the regulations to impose the notice requirement (including the obligation to give notice ten days in advance) for every denial of prescription drug coverage at the point-of-sale.

For those reasons, we reject the plaintiffs' argument that Title XIX's notice regulations are triggered whenever there has been a denial of a claim for prescription drug coverage at the point-of-sale. We therefore affirm the district court's dismissal of the plaintiffs' Title XIX claims, albeit on different grounds. *See United States v. Coughlin*, 610 F.3d 89, 108 (D.C. Cir. 2010).

III.

The district court also dismissed the plaintiffs' due process claims. To bring a claim under the Due Process Clause, a plaintiff must show (i) deprivation of a protected liberty or property interest, *see Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010); (ii) by the government, *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); (iii) without the process that is "due" under the Fifth

Amendment, *see Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). The district court determined that, for *most* of the alleged denials, the plaintiffs lacked a protected property interest. The court further concluded that, for *all* of the alleged denials, the plaintiffs failed to allege a deprivation at the hands of the government. We disagree as to both conclusions, and we therefore remand for further proceedings to determine what process is "due" to the plaintiffs.

A.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'" *Gen. Elec. Co.*, 610 F.3d at 117. "Only after finding the deprivation of a protected interest do we look to see if the government's [actions] comport with due process." *Id.* (brackets omitted). We conclude that the plaintiffs have adequately alleged a protected property interest in their prescription drug benefits.

It is well established that certain government benefits give rise to property interests protected by the Due Process Clause. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254 (1970). Not all government benefits do, however. To have a protected property interest in a given benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). We have thus indicated in similar circumstances that a "legitimate claim of entitlement" is an essential condition of a protected property interest. *See Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014).

The District, echoing the district court's reasoning, contends that, to the extent the plaintiffs failed to meet preconditions to prescription drug benefits under Medicaid (*e.g.*, valid Medicaid enrollment and satisfaction of any prior authorization requirements), the plaintiffs had no "legitimate claim of entitlement" to those benefits for due process purposes. The District's argument misapprehends what is meant by a "legitimate claim of entitlement." A "legitimate claim of entitlement" means that a person would be entitled to receive the government benefit *assuming* she satisfied the preconditions to obtaining it. A claim of entitlement therefore is "legitimate" if award of the benefit would follow from satisfaction of applicable eligibility criteria. *See Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997). Insofar as the government retains "unfettered discretion" to withhold the benefit even upon satisfaction of all eligibility criteria, "no constitutionally protected property interest exists." *Id.* But if "the statute or implementing regulations place 'substantive limitations on official discretion'" to withhold award of the benefit upon satisfaction of the eligibility criteria, there is a legitimate claim of entitlement, as to which the Due Process Clause affords protection. *Id.* (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). *Compare Daniels v. Woodbury Cnty.*, *Iowa*, 742 F.2d 1128, 1132-33 (8th Cir. 1984) (award of benefit sufficiently mandatory), *with Eidson v. Pierce*, 745 F.2d 453, 461 (7th Cir. 1984) (award of benefit insufficiently mandatory).

The District therefore errs in arguing that a plaintiff must show that she *satisfies* the preconditions to prescription drug coverage in order to have a "legitimate claim of entitlement" to coverage. For instance, the District contends that a plaintiff has no legitimate claim of entitlement in connection with a drug requiring prior authorization unless the plaintiff has in

fact secured prior authorization. And the District similarly argues that a plaintiff has no legitimate claim of entitlement if she is not enrolled in Medicaid or if she fails to present valid proof of enrollment. Those arguments incorrectly skip ahead to the plaintiff's ultimate eligibility for a government benefit instead of asking whether she would be entitled to the benefit *if* she were to satisfy the preconditions to obtaining it.

Here, we find that the plaintiffs have a legitimate claim of entitlement to coverage of any drug not completely excluded from coverage under Medicaid. The District's Medicaid regulations providing for prescription drug coverage use mandatory, non-discretionary terms. *See, e.g.*, D.C. Mun. Regs. tit. 29, § 2703.1 ("The District of Columbia Medicaid Program *shall* reimburse claims . . . ." (emphasis added)). And the District makes no argument that, upon the satisfaction of all eligibility criteria, it retains discretion to deny a claim for a covered prescription drug. The plaintiffs therefore have protected property interests in the coverage of prescription drugs not completely excluded from Medicaid coverage.

Of course, a plaintiff would still need to demonstrate valid Medicaid enrollment and compliance with any prior authorization or other threshold requirements in order for her prescription, in fact, to be covered. But the procedural protections of the Due Process Clause exist to give her a fair opportunity to show that she meets the criteria for coverage. We therefore conclude that the prescription drug coverage sought by the plaintiffs qualifies as a property interest protected by the Fifth Amendment.

18

B.

Because due process offers no shield against purely private conduct, "however discriminatory or wrongful," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974), we next examine whether the alleged deprivation of the plaintiffs' property interests occurred at the hands of the government. *See Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50. We find the Due Process Clause's state action requirement to be satisfied here: The plaintiffs adequately alleged that Xerox, a private company, determined their eligibility for benefits while acting as an agent of the District.

At the motion-to-dismiss stage, we must accept all factual allegations in the complaint as true. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The plaintiffs' complaint includes a series of detailed allegations concerning the denials of their claims after they presented their prescriptions in a pharmacy and sought to invoke Medicaid coverage. As described by the plaintiffs:

> [T]he recipient presents the prescription to a pharmacy provider. The pharmacy provider immediately submits an electronic claim through its computer to [Xerox]. The claims are decided immediately. The pharmacy provider receives an electronic return message from [Xerox] indicating whether the prescription will be covered by Medicaid. If the claim is denied, the pharmacy provider provides an electronic return message with a rejection code that corresponds to the reason for the denial of the claim.

Pls.' Amend. Compl. ¶ 34. Accepting the truth of those allegations, that is more than enough for us to make a reasonable inference that Xerox, upon submission of a prescription to a pharmacy, engages in a real-time determination of the plaintiffs' eligibility for prescription drug benefits under Medicaid.

The District points out that Xerox's claims system is not necessarily involved every time a pharmacist informs a patient that coverage has been denied. That may be true. For instance, a pharmacist might simply decline to relay a prescription through Xerox's system and then unilaterally inform a plaintiff that coverage has been denied. But in addition to their general description of the process, the plaintiffs also included in their complaint specific instances—with rejection codes—in which Xerox determined their coverage. *See, e.g.*, Pls.' Amend. Compl. ¶ 81. With upwards of 6,000 claims passing through Xerox's system on a single day (of which approximately half may be denied), *see id.* ¶ 44, we readily infer at this stage that many of the plaintiffs' claims follow that process. For purposes of resolving the District's motion to dismiss, we make the reasonable inference that, unless a plaintiff has otherwise alleged specific facts to the contrary, a pharmacist who informs a claimant of a coverage denial is generally communicating the results of Xerox's determination.

Xerox, therefore, took the "action." But is Xerox's action "*state* action?" We find that it is. While the actions of private actors generally do not count as state action for due process purposes, *see, e.g.*, *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543-47 (1987), the state action requirement is met if "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State

itself," *Brentwood Acad. v. Tenn. Secondary Schs. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted). The requisite nexus generally exists when a private party acts as an agent of the government in relevant respects. *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989). Here, the allegations in the complaint support the inference that Xerox acted as the District's agent for purposes of determining a person's eligibility for prescription drug coverage under Medicaid. The District does not contend otherwise.

The District instead argues that the state action requirement remains unsatisfied because Xerox is not necessarily at fault in circumstances in which the Xerox system denies coverage to which a beneficiary in fact has an entitlement. After all, the District observes, there may be myriad reasons for the erroneous denial of prescription drug coverage, including "pharmacy, physician, or patient error." Appellees' Br. 45. That is undoubtedly the case. But it still remains Xerox's determination that occasions denial of the recipients' claimed coverage. Xerox's actions—on behalf of the District—effected the denial of prescription drug coverage. We therefore find the state action requirement to be satisfied.

## C.

The final step in the due process inquiry calls for assessing whether the plaintiffs received constitutionally adequate process in connection with the denial of benefits. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. The analysis

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Here, the plaintiffs do get *some* process: Upon a denial of coverage, they may contact DHCF and the District will provide them with a reason. *See, e.g.*, Pls.' Amend. Compl. ¶ 102. And a hearing is always available to "[a]ny beneficiary who requests it because he or she believes the agency has taken an action erroneously." 42 C.F.R. § 431.220(a)(2). But the plaintiffs contend that the Due Process Clause entitles them to more process, including written notice of the opportunity to request a hearing anytime prescription drug coverage is denied at the point-of-sale.

We do not resolve that issue. The district court has yet to pass upon it, so neither will we. *See Liberty Prop. Trust v. Republic Props. Corp.*, 577 F.3d 335, 341 (D.C. Cir. 2009). Rather, we remand the case to permit the district court to conduct an inquiry in the first instance into what process is due.

22

\* \* \* \* \*

For the foregoing reasons, we affirm in part and reverse in part the district court's decision. We affirm the court's dismissal of the plaintiffs' Title XIX claims. We reverse the court's dismissal of the due process claims and remand for consideration of what process the plaintiffs are due under the Fifth Amendment. Finally, we note that the district court can reconsider its jurisdiction over the D.C.-law claims in light of our partial reversal.

*So ordered.*