FREW, ON BEHALF OF HER DAUGHTER, FREW, ET AL. *v.*
HAWKINS, COMMISSIONER, TEXAS HEALTH AND
HUMAN SERVICES COMMISSION, ET AL.

No. 02–628.   Argued October 7, 2003—Decided January 14, 2004

KENNEDY, J., delivered the opinion for a unanimous Court.

*Susan Finkelstein Zinn* argued the cause for petitioners. With her on the briefs were *Edward B. Cloutman III* and *Jane Kathryn Swanson.*

*Irving L. Gornstein* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Kneedler, Mark B. Stern,* and *Alisa B. Klein.*

*Rafael Edward Cruz,* Solicitor General of Texas, argued the cause for respondents. With him on the briefs were *Greg Abbott,* Attorney General, *Barry R. McBee,* First Assistant Attorney General, *Jeffrey S. Boyd,* Deputy Attorney General, and *Melanie P. Sarwal,* Assistant Solicitor General.[*]

JUSTICE KENNEDY delivered the opinion of the Court.

In this case we consider whether the Eleventh Amendment bars enforcement of a federal consent decree entered into by state officials.

## I

Medicaid is a cooperative federal-state program that provides federal funding for state medical services to the poor. See *Wilder* v. *Virginia Hospital Assn.,* 496 U. S. 498, 502 (1990). State participation is voluntary; but once a State elects to join the program, it must administer a state plan that meets federal requirements. One requirement is that every participating State must have an Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) program. See 79 Stat. 343, as amended, 42 U. S. C. §§ 1396a(a)(43), 1396d(r). EPSDT programs provide health care services to

---

[*]*David T. Goldberg* filed a brief for AARP et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of Utah et al. by *Mark L. Shurtleff,* Attorney General of Utah, and *Alain C. Balmanno* and *Joni J. Jones,* Assistant Attorneys General, and by the Attorneys General for their respective States as follows: *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Mark J. Bennett* of Hawaii, *Lawrence Wasden* of Idaho, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Michael A. Cox* of Michigan, *Mike Moore* of Mississippi, *Brian Sandoval* of Nevada, *Peter W. Heed* of New Hampshire, *Wayne Stenehjem* of North Dakota, *W. A. Drew Edmondson* of Oklahoma, *D. Michael Fisher* of Pennsylvania, *Lawrence E. Long* of South Dakota, *Jerry Kilgore* of Virginia, *William H. Sorrell* of Vermont, *Peg Lautenschlager* of Wisconsin, and *Pat Crank* of Wyoming; and for the National Conference of State Legislatures et al. by *Richard Ruda* and *James I. Crowley.*

children to reduce lifelong vulnerability to illness or disease. The EPSDT provisions of the Medicaid statute require participating States to provide various medical services to eligible children, and to provide notice of the services. See *ibid.*

Petitioners here are mothers of children eligible for EPSDT services in Texas. In 1993 they filed a civil action pursuant to Rev. Stat. § 1979, 42 U. S. C. § 1983, seeking injunctive relief against the Texas Department of Health and the Texas Health and Human Services Commission, as well as various officials at these agencies charged with implementing the Texas EPSDT program. The named officials included the commissioners of the two agencies, the Texas State Medicaid Director, and certain employees at the Texas Department of Health. The individuals were sued in their official capacities and were represented throughout the litigation by the office of the Texas attorney general.

Petitioners alleged that the Texas program did not satisfy the requirements of federal law. They asserted that the Texas program did not ensure eligible children would receive health, dental, vision, and hearing screens; failed to meet annual participation goals; and gave eligible recipients inadequate notice of available services. Petitioners also claimed the program lacked proper case management and corrective procedures and did not provide uniform services throughout Texas.

After the suit was filed, the two Texas state agencies named in the suit moved to dismiss the claims against them on Eleventh Amendment grounds. Petitioners did not object, and in 1994 the District Court dismissed the state agencies as parties. The state officials remained in the suit, and the District Court certified a class consisting of children in Texas entitled to EPSDT services, a class of more than 1 million persons. Following extensive settlement negotiations, petitioners and the state officials agreed to resolve the suit by entering into a consent decree. The District

Court conducted a fairness hearing, approved the consent decree, and entered it in 1996.

Judicial enforcement of the 1996 consent decree is the subject of the present dispute. The decree is a detailed document about 80 pages long that orders a comprehensive plan for implementing the federal statute. In contrast with the brief and general mandate in the statute itself, the consent decree requires the state officials to implement many specific procedures. An example illustrates the nature of the difference. The EPSDT statute requires States to "provid[e] or arrang[e] for the provision of . . . screening services in all cases where they are requested," and also to arrange for "corrective treatment" in such cases. 42 U. S. C. §§ 1396a(a)(43)(B), (C). The consent decree implements the provision in part by directing the Texas Department of Health to staff and maintain toll-free telephone numbers for eligible recipients who seek assistance in scheduling and arranging appointments. Consent Decree ¶¶ 241–242, Lodging of Petitioners 63–64. According to the decree, the advisors at the toll-free numbers must furnish the name, address, and telephone numbers of one or more health care providers in the appropriate specialty in a convenient location, and they also must assist with transportation arrangements to and from appointments. *Id.*, ¶¶ 243–245, Lodging of Petitioners 64. The advisers must inform recipients enrolled in managed care health plans that they are free to choose a primary care physician upon enrollment. *Id.*, ¶ 244, Lodging of Petitioners 64.

Two years after the consent decree was entered, petitioners filed a motion to enforce it in the District Court. The state officials, it was alleged, had not complied with the decree in various respects. The officials denied the allegations and maintained that the Eleventh Amendment rendered the decree unenforceable even if they were in noncompliance. After an evidentiary hearing, the District Court issued a detailed opinion concluding that certain provisions

of the consent decree had been violated. *Frew* v. *Gilbert*, 109 F. Supp. 2d 579 (ED Tex. 2000). The District Court rejected the Eleventh Amendment argument, *id.*, at 660–678, and directed the parties to submit proposals outlining possible remedies for the violations.

The state officials filed an interlocutory appeal, and the Court of Appeals for the Fifth Circuit reversed. The Court of Appeals held that the Eleventh Amendment prevented enforcement of the decree unless the violation of the consent decree was also a statutory violation of the Medicaid Act that imposed a clear and binding obligation on the State. *Frazar* v. *Gilbert*, 300 F. 3d 530, 543 (2002). The Court of Appeals assessed the violations identified by the District Court and concluded that none provided a valid basis for enforcement. Regardless of whether the EPSDT program complied with the detailed consent decree, the Court of Appeals reasoned, the program was good enough to comply with the general mandates of federal law. The Court of Appeals concluded that because petitioners had not established a violation of federal law, the District Court lacked jurisdiction to remedy the consent decree violations. *Id.*, at 546–551.

Other Circuits have reached a contrary result, holding that the Eleventh Amendment does not bar enforcement of consent decrees in like circumstances. See, *e. g.*, *Kozlowski* v. *Coughlin*, 871 F. 2d 241, 244 (CA2 1989); *Wisconsin Hospital Assn.* v. *Reivitz*, 820 F. 2d 863, 868 (CA7 1987). We granted certiorari to resolve the conflict among the Courts of Appeals. 538 U. S. 905 (2003).

## II

Petitioners advance two reasons why the consent decree can be enforced without violating the Eleventh Amendment. First, they argue the State waived its Eleventh Amendment immunity in the course of litigation. Second, they contend that enforcement is permitted under the principles of *Ex parte Young*, 209 U. S. 123 (1908). We agree that

the decree is enforceable under *Ex parte Young,* and so we do not address the waiver argument.

This case involves the intersection of two areas of federal law: the reach of the Eleventh Amendment and the rules governing consent decrees. The Eleventh Amendment con-. firms the sovereign status of the States by shielding them from suits by individuals absent their consent. *Seminole Tribe of Fla.* v. *Florida,* 517 U. S. 44, 54 (1996). To en- sure· the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Ex parte Young, supra.* This standard allows courts to order prospective relief, see *Edelman* v. *Jordan,* 415 U. S. 651 (1974); *Milliken* v. *Bradley,* 433 U. S. 267 (1977), as well as measures ancillary to appropriate prospective relief, *Green* v. *Mansour,* 474 U. S. 64, 71–73 (1985). Federal courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity. *Edelman, supra,* at 668.

Consent decrees have elements of both contracts and judi- cial decrees.. *Firefighters* v. *Cleveland,* 478 U. S. 501, 519 (1986). A consent decree "embodies an agreement of the parties" and is also "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judi- cial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo* v. *Inmates of Suffolk County Jail,* 502 U. S. 367, 378 (1992). Consent decrees en- tered in federal court must be directed to protecting federal interests. In *Firefighters,* we observed that a federal con- sent decree must spring from, and serve to resolve, a dispute within the court's subject-matter jurisdiction; must come within the general scope of the case made by the pleadings; and must further the objectives of the law upon which the complaint was based. 478 U. S., at 525.

This brings us to the intersection of the principles govern- ing consent decrees and the Eleventh Amendment. As we

understand their argument, the state officials do not contend that the terms of the decree were impermissible under *Ex parte Young.* Nor do they contend that the consent decree failed to comply with *Firefighters.* The officials challenge only the enforcement of the decree, not its entry. They argue that the Eleventh Amendment narrows the circumstances in which courts can enforce federal consent decrees involving state officials.

The theory advanced by the state officials is similar to the one accepted by the Court of Appeals. The officials reason that *Ex parte Young* creates a narrow exception to the general rule of Eleventh Amendment immunity from suit. Consent decrees involving state representatives threaten to broaden this exception, they contend, because decrees allow state officials to bind state governments to significantly more commitments than what federal law requires. Brief for Respondents 9–22. Permitting the enforcement of a broad consent decree would give courts jurisdiction over not just federal law, but also everything else that officials agreed to when they entered into the consent decree. A State in full compliance with federal law could remain subject to federal-court oversight through a course of judicial proceedings brought to enforce the consent decree. To avoid circumventing Eleventh Amendment protections, the officials argue, a federal court should not enforce a consent decree arising from an *Ex parte Young* suit unless the court first identifies, at the enforcement stage, a violation of federal law such as the EPSDT statute itself. Brief for Respondents 9–22.

We disagree with this view of the Eleventh Amendment. The decree is a federal-court order that springs from a federal dispute and furthers the objectives of federal law. See *Firefighters, supra,* at 525. The decree states that it creates "a mandatory, enforceable obligation." Consent Decree ¶ 302, Lodging of Petitioners 76. In light of the State's assertion of its Eleventh Amendment immunity, the state

officials lacked the authority to agree to remedies beyond the scope of *Ex parte Young* absent a waiver, as petitioners concede. Tr. of Oral Arg. 12. We can assume, moreover, that the state officials could not enter into a consent decree failing to satisfy the general requirements of consent decrees outlined in *Firefighters*. Petitioners' motion to enforce, however, sought enforcement of a remedy consistent with *Ex parte Young* and *Firefighters*, a remedy the state officials themselves had accepted when they asked the District Court to approve the decree. Enforcing the agreement does not violate the Eleventh Amendment.

The theory advanced by the state officials relies heavily on our decision in *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S. 89 (1984). *Pennhurst* is distinguishable. In that case we found the rationale of *Ex parte Young* inapplicable to suits brought against state officials alleging violations of state law. 465 U. S., at 106. Jurisdiction was improper because "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Ibid.* Here, by contrast, the order to be enforced is a federal decree entered to implement a federal statute. The decree does implement the Medicaid statute in a highly detailed way, requiring the state officials to take some steps that the statute does not specifically require. The same could be said, however, of any effort to implement the general EPSDT statute in a particular way. The decree reflects a choice among various ways that a State could implement the Medicaid Act. As a result, enforcing the decree vindicates an agreement that the state officials reached to comply with federal law.

*Hutto* v. *Finney*, 437 U. S. 678 (1978), is instructive on this point. In *Finney*, the Court upheld a District Court's award of attorney's fees designed to encourage state compliance with an existing court order. State prisoners had sued state prison officials claiming that the conditions of their confine-

ment violated the Eighth Amendment, and the District Court had ordered the officials to improve prison conditions. When the officials refused to comply in good faith with the order, the District Court awarded attorney's fees to the prisoners' lawyers to be paid from the state treasury. *Id.*, at 685. The state officials objected, arguing that the relief was not valid under the Eleventh Amendment because it exceeded the scope of *Ex parte Young.* The Court rejected this argument:

> "In exercising their prospective powers under *Ex parte Young* and *Edelman* v. *Jordan,* federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced. . . . If a state agency refuses to adhere to a court order, a financial penalty may be the most effective means of insuring compliance. The principles of federalism that inform Eleventh Amendment doctrine surely do not require federal courts to enforce their decrees only by sending high state officials to jail. The less intrusive power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief." 437 U. S., at 690–691 (footnote omitted).

The award of attorney's fees "vindicated the District Court's authority over a recalcitrant litigant," the Court continued. "We see no reason to distinguish this award from any other penalty imposed to enforce a prospective injunction." *Id.*, at 691–692.

While *Finney* is somewhat different from the present case in that it involved the scope of remedies for violation of a prior order rather than the antecedent question whether remedies are permitted in the first instance, a similar principle applies. Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced.

## III·

The state officials warn that enforcement of consent decrees can undermine the sovereign interests and accountability of state governments. Brief for Respondents 23–32. The attorneys general of 19 States assert similar arguments as *amici curiae*. Brief for Utah et al. as *Amici Curiae*. The concerns they express are legitimate ones. If not limited to reasonable and necessary implementations of federal law, remedies outlined in consent decrees involving state officeholders may improperly deprive future officials of their designated legislative and executive powers. They may also lead to federal-court oversight of state programs for long periods of time even absent an ongoing violation of federal law.

When a federal court has entered a consent decree under *Ex parte Young,* the law's primary response to these concerns has its source not in the Eleventh Amendment but in the court's equitable powers and the direction given by the Federal Rules of Civil Procedure. In particular, Rule 60(b)(5) allows a party to move for relief if "it is no longer equitable that the judgment should have prospective application." The Rule encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances. In *Rufo* v. *Inmates of Suffolk County Jail,* 502 U. S. 367 (1992), the Court explored the application of the Rule to consent decrees involving institutional reform. The Court noted that district courts should apply a "flexible standard" to the modification of consent decrees when a significant change in facts or law warrants their amendment. *Id.,* at 393. See also *Philadelphia Welfare Rights Org.* v. *Shapp,* 602 F. 2d 1114 (CA3 1979) (modifying consent decree implementing Pennsylvania's EPSDT program in light of changed circumstances).

*Rufo* rejected the idea that the institutional concerns of government officials were "only marginally relevant" when officials moved to amend a consent decree, and noted that

"principles of federalism and simple common sense require the [district] court to give significant weight" to the views of government officials. 502 U. S., at 392, n. 14. When a suit under *Ex parte Young* requires a detailed order to ensure compliance with a decree for prospective relief, and the decree in effect mandates the State, through its named officials, to administer a significant federal program, principles of federalism require that state officials with front-line responsibility for administering the program be given latitude and substantial discretion. ·

The federal court must exercise its equitable powers to ensure that when the objects of the decree have been attained, responsibility for discharging the State's obligations is returned promptly to the State and its officials. As public servants, the officials of the State must be presumed to have a high degree of competence in deciding how best to discharge their governmental responsibilities. A State, in the ordinary course, depends upon successor officials, both appointed and elected, to bring new insights and solutions to problems of allocating revenues and resources. The basic obligations of federal law may remain the same, but the precise manner of their discharge may not. If the State establishes reason to modify the decree, the court should make the necessary changes; where it has not done so, however, the decree should be enforced according to its terms.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*