# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 24, 2017

Lyle W. Cayce
Clerk

No. 15-31119

———————

M. C. MOORE, as father and next friend to minors Joyce Marie Moore, Jerry Moore, and Thelma Louise Moore; HENRY SMITH, as father and next friend to minors Bennie Smith, Charles Edward Smith, Shirley Ann Smith, and Earline Smith,

     Plaintiffs - Appellees

v.

TANGIPAHOA PARISH SCHOOL BOARD, a corporation,

     Defendant - Appellant

———————

Appeals from the United States District Court
for the Eastern District of Louisiana

———————

Before JOLLY, BARKSDALE, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

In 1965, Plaintiffs sued Tangipahoa Parish School Board, seeking desegregation of the school district. Since then, numerous remedial injunctions have been issued in pursuit of the ultimate goal: full unitary status and dismissal of the case. In 2008, the district court granted the parties' joint motion to create the position of Chief Desegregation Implementation Officer. The terms of the injunction do not require the district court to approve the School Board's candidate for the job. Nevertheless, the School Board previously submitted some candidates for consideration. The district court

No. 15-31119

rejected the School Board's latest proposed candidate, approving instead the candidate supported by Plaintiffs and the Court Compliance Officer. The School Board appealed the district court's original order and the denial of the Rule 60(b) motion for relief from judgment. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs sued Tangipahoa Parish School Board in 1965, claiming equal-protection violations under 42 U.S.C. § 1983 that stemmed from systematic segregation. The district court first issued an injunction in 1967 but has since issued several remedial injunctions with the goal of achieving the school district's full unitary status.

In 2008, the parties jointly moved the district court to create the position of Chief Desegregation Implementation Officer ("CDIO"). According to the School Board, the purpose of the position is "to further the ability of the Board to efficiently and proactively meet its desegregation obligations." The CDIO is thus responsible for "coordinat[ing] and oversee[ing] all aspects of the implementation of the court's orders[.]" The CDIO reports directly to the school superintendent and the Court Compliance Officer ("CCO"), who works independently of the school district to ensure compliance with the court's orders and to coordinate and monitor the parties' actions. The CDIO position is not intended to detract from the CCO's responsibilities. Instead, the CDIO works beneath the CCO to "make ongoing reports and provide all information as requested[.]" According to the original injunction, a candidate must possess a master's or doctorate degree with emphasis on organizational leadership to be considered for the CDIO position. The CDIO serves a term of twelve consecutive months as a "full-time, year round" employee.

The parties attached a list of the CDIO's duties and responsibilities to their joint motion. It provides the CDIO is intended to supervise "[p]ersonnel

No. 15-31119

below the level of Superintendent and Assistant Superintendent involved in implementation of [the] Consent Judgment." The CDIO's listed responsibilities are numerous and include coordinating academic transfers, community-involvement programs, and drop-out-prevention programs.

No court order defines the CDIO selection-and-approval process. Nor does any court order require the district court to approve the School Board's recommended candidate for CDIO. Nevertheless, the School Board has sought approval for some prior appointees.

In July 2015, then-CDIO Lionel Jackson announced his intention to remain on sick leave until his retirement in December 2015. For two months, the School Board assigned the CDIO's duties to appropriate staff members while searching for a new CDIO. In his annual report filed with the district court, the CCO recommended Andrew Jackson for the CDIO position. Jackson is a local minister who holds a bachelor's degree in criminal justice and formerly served as principal of a local residential facility for juvenile delinquents. The School Board considered Jackson, but it ultimately named Lawrence Thompson as acting CDIO. Thompson holds a master's degree, has served as a principal in the district, and had served as the district's Chief Welfare and Attendance Officer until he retired in 2010.

In August 2015, the School Board filed two motions in the district court, seeking (1) approval of Thompson as CDIO, and (2) elimination of the CDIO position, or, alternatively, revision of the CDIO job description. Plaintiffs opposed Thompson's appointment, asserting that Jackson would be a better choice because he is an unbiased outsider who "has the backing of the Black community" and the CCO. The district court denied the opposed motions and appointed Jackson. The School Board timely noticed its interlocutory appeal.

After the original appeal was docketed, the School Board filed a motion for indicative ruling in the district court under Federal Rule of Civil Procedure

No. 15-31119

62.1, arguing the court should reconsider its decision because Jackson has various conflicts of interest that render him unsuitable to serve as CDIO. Among other things, the School Board discovered that Jackson was once married to the daughter of a named Plaintiff and had a child with her before their divorce in 1975. The Plaintiffs opposed the motion on procedural grounds. The district court granted the motion, holding that the new allegations regarding Jackson's familial ties to the Plaintiffs merited reconsideration of the order appointing Jackson as CDIO. Under Federal Rule of Appellate Procedure 12.1(a), this court was given notice of the district court's order.

Responding to that notice, we remanded the case "for the limited purpose of allowing the district court to rule on the matter identified in its indicative order." We also instructed the district court to "make additional findings to explain its appointment of Mr. Jackson instead of Mr. Thompson." On remand, the district court styled its order as responding to a Rule 60(b) motion for relief from judgment. It held that none of the alleged conflicts of interest were sufficient to justify overturning its prior order appointing Jackson as CDIO. It further justified its selection of Jackson by noting his work experience, community involvement, and personal reputation. The School Board then amended its notice of appeal to encompass both the original order appointing Jackson and the district court's order on the Rule 60(b) motion.

## DISCUSSION

The School Board originally appealed the district court's appointment order, which we review for an abuse of discretion because it was a modification of an injunction. *See Moses v. Washington Par. Sch. Bd.*, 379 F.3d 319, 327 (5th Cir. 2004). The School Board also appeals the district court's denial of a Rule 60(b) motion for relief from judgment. We review such denials for an

4

abuse of discretion also. *Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013). It is not enough that granting the motion may have been permissible; instead, denial of relief "must have been so unwarranted as to constitute an abuse of discretion." *Id.* Although "the district court's ruling is entitled to deference," questions of law underlying its decision are reviewed *de novo*. *Frew v. Janek*, 820 F.3d 715, 719 (5th Cir. 2016).

We address the contentions in two parts. First, we discuss the original appeal concerning the district court's modification of the injunction through the appointment of Jackson as CDIO. Second, we address the district court's denial of the Rule 60(b) motion for relief from judgment.

As a threshold matter, we note the Plaintiffs as appellees failed to file an initial appellate brief or a letter brief in response to the district court's supplemental order. Under Federal Rule of Appellate Procedure 31, "[t]he appellee must serve and file a brief within 30 days after the appellant's brief is served." Subsection (c) provides that any "appellee who fails to file a brief will not be heard at oral argument unless the court grants permission[.]" We agree with a nonprecedential opinion that the rule nonetheless permits affirmance when appellees fail to file a brief. *See SPSL Opobo Liberia, Inc. v. Marine Worldwide Servs., Inc.*, 454 F. App'x 303, 305 (5th Cir. 2011).

## I.   *Modification of the Injunction*

The School Board initially brought an interlocutory appeal from what it claims was a modification of an injunction. If the order merely interpreted the injunction, we have no jurisdiction. *In re Seabulk Offshore, Ltd.*, 158 F.3d 897, 899 (5th Cir. 1998). There is jurisdiction, though, when the district court modifies an existing injunction. *See* 28 U.S.C. § 1292(a)(1).

To decide the nature of this order, "[w]e look beyond the terms used by the parties and the district court to the substance of the action." *Seabulk*, 158

F.3d at 899.   A district court interprets an injunction by enforcing the injunction according to its terms or establishing "procedures for enforcement without changing the command of the injunction."  *In re Deepwater Horizon*, 793 F.3d 479, 491 (5th Cir. 2015).   Modification, on the other hand, requires that the injunction be altered by the court in some way.  *Id*.

The district court explicitly denied the School Board's motion to modify the CDIO's job description.  The substance of the action was a modification, as it appointed a candidate who was not qualified under the injunction.  The injunction required the CDIO to possess a master's or doctorate degree.  Jackson only possessed a bachelor's degree.  Further, the district court rejected the School Board's recommended appointee in favor of another candidate even though the original order creating the CDIO position is silent about the court's role in the selection and approval of the person.  Thus, the district court's actions were modifications of the terms of the injunction.  That means we have jurisdiction.  *See Seabulk*, 158 F.3d at 899.

In its original appeal, the School Board argued that the district court abused its discretion by (1) modifying the academic qualifications for the CDIO; (2) modifying the selection-and-approval procedure for the CDIO; and (3) relying on the Plaintiffs' and the CCO's recommendation in appointing Jackson as CDIO.  The third argument collapses into the first two because it merely supports the contentions about how the district court abused its discretion in departing from the terms of the injunction.  Academic qualifications and the process for selection and approval are thus our focus.

Federal courts have broad equitable powers to fashion remedial measures designed to eliminate school segregation.  *Milliken v. Bradley*, 433 U.S. 267, 279–80 (1977).  The district court may "adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action."  *Freeman v. Pitts*, 503 U.S. 467, 487 (1992).  If injunctive

relief is "to be enforced with fairness and precision," it must be flexible. *Id.* Accordingly, "sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 437 (1976). A school district, though, is "entitled to a rather precise statement of its obligations under a desegregation decree." *Board of Educ. of Oklahoma City Pub. Schs. v. Dowell*, 498 U.S. 237, 246 (1991).

We look first at the modification of the CDIO's academic qualifications. The terms of the injunction, proposed by joint motion of the parties in 2008, required a CDIO candidate to possess a master's or doctorate degree with emphasis on organizational leadership. All of the previous CDIOs satisfied the academic-qualifications requirement. Similarly, the School Board's candidate, Lawrence Thompson, holds a master's degree and is a former educator and administrator in the district. These qualifications are necessary, the School Board asserts, because "the CDIO is required to perform a broad spectrum of duties involving multiple academic disciplines and institutional procedures, the knowledge of which is particularly acquired via the requisite academic degree as well as lengthy educational experience." In contrast, Jackson "holds no [degree] in education or in educational administration."

The district court rejected the academically qualified candidate in favor of Jackson. On remand, following its grant of the School Board's motion for indicative ruling, the district court offered additional explanation for its decision. First, Jackson was the preferred candidate of the Plaintiffs and the CCO, while Thompson "did not have the support of the African American community." Second, Jackson was not a former school-system employee, which brings "a level of independence and impartiality" to the CDIO position that might better serve the school district's ultimate purpose. Jackson is also a

7

leader in a local church and a well-respected member of the community. Finally, he proved his administrative ability during "sixteen years managing an organization dedicated to helping at-risk youth." This summary seems to mean the district court found Jackson to be more qualified than Thompson even without the requisite degree.

There are several principles pertinent to our analysis. First, consent decrees are contractual in nature, so parties may fairly expect such orders to be enforced as both a contract and a judicial decree. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). As a judicial decree, such injunctions are "subject to the rules generally applicable to other judgments and decrees," *id.*, including modification, *see id.* at 441. Further, individuals and entities subject to injunctions must have fair notice of the terms of the injunction and any modifications that take place. *See W. Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 109 (5th Cir. 1994); *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387–88 (5th Cir. 1980). Upon proper notice, the district court may modify the terms of an injunction *sua sponte*. *W. Water*, 40 F.3d at 109.

Despite the fact that the parties jointly agreed to the initial terms, the court utilized its flexible authority to modify the decree when faced with changed circumstances. *See Spangler*, 427 U.S. at 437. Although Thompson satisfied the stated requirements for the CDIO position, the district court found that Jackson was more qualified through life experience and community involvement. The parties were on notice of a possible modification at least through the CCO's earlier annual report suggesting the court name Jackson. The School Board was not "unprepared" to defend its selection of Thompson. *See W. Water*, 40 F.3d at 109. Modification of the academic-qualifications requirement was not an abuse of discretion.

The School Board next argues that the district court improperly modified the process for selecting and approving a CDIO. The record reveals, though,

that there had been prior referral of final approval of a CDIO to the court.  For example, the School Board sought the court's approval when the first CDIO was replaced, then failed to do so for the CDIO immediately thereafter.  Since the position was created in 2008, the School Board sought court approval for three out of four candidates.

The same principles articulated earlier apply here.  The district court had the authority to modify the terms of the injunction when faced with changed circumstances.  *See Spangler*, 427 U.S. at 437.  As previously noted, the district court found Jackson to be more qualified than Thompson and rejected the School Board's recommendation.  Further, the School Board was clearly on notice of the district court's prior involvement, having approached the court for approval of a CDIO candidate at least three times.  *See W. Water*, 40 F.3d at 109.  The district court did not abuse its discretion in modifying the selection-and-approval process.

## II.  *Denial of Rule 60(b) Motion for Relief from Judgment*

In its Rule 60(b) motion for relief from judgment, the School Board argued that Jackson has several conflicts of interest rendering him unfit to serve as CDIO.  The first was that Jackson had been married to "Catherine Moore (the alleged daughter of M.C. Moore and sister of named class representative Joyce Marie Moore), with whom he has one child."  The second was due to evidence the School Board obtained "of a certificate of marriage between one Jessie Jackson, Jr. (allegedly a relation to Andrew Jackson) and Joyce Marie Moore (the daughter of M.C. Moore and on whose behalf he filed suit)."  Finally, the School Board claims Jackson is involved with a local Ministerial Alliance, which may inhibit the impartial exercise of judgment.

In response, Plaintiffs admit that Jackson was married to Catherine Moore from 1969 to 1975.  Plaintiffs also acknowledge that Jackson and Moore

have a daughter together who is related to the plaintiffs. Regardless, they contend the School Board has not shown from these facts that any conflict of interest "would interfere with Mr. Jackson fairly performing his duties as a CDIO." As to the other claimed disqualifying relationship, Plaintiffs argue that even if someone named Jessie Jackson once married Joyce Marie Moore, the School Board offered no evidence to show that he and the CDIO Jackson are related.

The district court found that Jackson's familial ties were insufficient to warrant reversal of its earlier appointment order. It acknowledged the existence of the marriage relationship between Andrew Jackson and Catherine Moore but determined the relationship created neither an actual conflict nor the appearance of impropriety. It further noted the lack of evidence establishing a relationship between Andrew and Jessie Jackson. "Without evidence that these two individuals are actually related," it held, "this Court cannot find that there is a relationship that could reasonably implicate a conflict of interest."

A district court does not abuse its discretion by making a decision after the parties present little or no evidence of a particular fact. *See*, *e.g.*, *Shaffer v. Williams*, 794 F.2d 1030, 1033–34 (5th Cir. 1986). At most, there is an admission that Andrew Jackson and Catherine Moore were once married and had a child together who is related to the named Plaintiffs. The marriage was in the distant past, and the School Board did not show an actual conflict arising from Jackson's daughter. The district court did not rule based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

As to Jackson's affiliation with the Ministerial Alliance, the district court concluded this argument could not be reconsidered at this point. The district court understood that the issue had been addressed when the School Board

first moved for approval of Lawrence Thompson as CDIO. It appears, though, that Jackson's affiliation with the Ministerial Alliance was not raised as an issue at that time. The memorandum in support of that motion contained no reference to the Ministerial Alliance, and Jackson is only mentioned in a brief footnote. The argument is a new one.

According to a newspaper article the School Board offered as an exhibit, the Ministerial Alliance is an interdenominational organization "with the goal of raising all people of th[e] area politically, economically and socially." Jackson is the vice president of the Alliance and also serves as "the pastor of a major congregation in Tangipahoa Parish[.]" In his capacity as vice president of the Alliance, Jackson has revealed his intent to "emphasize political involvement." In its supplemental brief, the School Board identified this as a conflict of interest because Jackson allegedly "revealed that he was acting on behalf of [the Alliance] regarding the desegregation case — the same desegregation case for which he was appointed to serve as CDIO and act on behalf of the Board." The School Board introduced into evidence an email showing that Jackson had at least twice acted in his capacity as vice president of the Ministerial Alliance to conduct meetings and engage in correspondence regarding the School Board's desegregation plan.

As with the alleged marital conflicts, the School Board has failed to produce evidence establishing how the Ministerial Alliance affiliation has previously or might potentially generate a conflict. We conclude Jackson's role with the Ministerial Alliance does not justify holding the district court abused its discretion in appointing Jackson as CDIO.

AFFIRMED.

11