**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-1124 & 16-3019
_____

IN RE: FLONASE ANTITRUST LITIGATION

Smithkline Beecham Corporation, d/b/a GlaxoSmithKline;
n/k/a GlaxoSmithKline LLC, including GlaxoSmithKline,
PLC,

                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-08-cv-03301)
District Judge:  Honorable Anita B. Brody
_____

Argued June 7, 2017
Before: CHAGARES, GREENAWAY, JR., and
VANASKIE, *Circuit Judges*.


(Opinion Filed:  December 22, 2017)

Lisa S. Blatt **[ARGUED]**
R. Stanton Jones
Sarah M. Harris
Robert Leider
Sally L. Pei
Arnold & Porter LLP
601 Massachusetts Ave., NW
Washington, DC 20001

Stephen J. Kastenberg
Burt M. Rublin
Jessica M. Anthony
Ballard Spahr LLP
1735 Market St., 51st Fl.
Philadelphia, PA 19103

*Counsel for Appellant*

Richard A. Samp
Mark S. Chenoweth
Washington Legal Foundation
2009 Massachusetts Ave., NW
Washington, DC 20036

*Counsel for Amicus Appellants National
Association of Manufacturers and Washington
Legal Foundation*

William S. Consovoy
Thomas R. McCarthy
Carmeron T. Norris
Consovoy McCarthy Park
3033 Wilson Blvd, Suite 700
Arlington, VA  22201

Kate Comerford Todd
Steven P. Lehotsky
Janet Galeria
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC  20062

> *Counsel for Amicus Appellant Chamber of*
> *Commerce of the United States of America*

Cary Silverman
Shook Hardy & Bacon
1155 F Street, NW, Suite 200
Washington, DC  20004

H. Sherman Joyce
Lauren Sheets Jarrell
American Tort Reform Association
1101 Connecticut Ave., NW Suite 400
Washington, DC  20036

> *Counsel for Amicus Appellant American Tort*
> *Reform Association*

Bart D. Cohen
Nussbaum Law Group PC
570 Lexington Ave., 19th Floor
New York, NY  10022

John Alden Meade **[ARGUED]**
Young Cotter & Meade
909 Poydras St., Suite 1600
New Orleans, LA 70112

*Counsel for Appellee*

————————————

OPINION
————————————

GREENAWAY, JR., *Circuit Judge*.

In this case, SmithKline Beecham Corporation, doing business as GlaxoSmithKline ("GSK"), seeks to enforce a court-approved settlement agreement and enjoin the State of Louisiana, through its Attorney General, from bringing allegedly released claims against GSK in the Louisiana state courts. Louisiana protests this enforcement action on the theory that the Eleventh Amendment to the Constitution of the United States bars its involuntary inclusion in the settlement agreement.

To resolve this dispute, we must answer two questions: First, does a motion for approval of a class action settlement qualify as a suit against a state for Eleventh Amendment purposes if the requested settlement agreement enjoins a state

from suing in a state court? Second, if the Eleventh Amendment does cover this motion for settlement approval, may GSK avoid the Eleventh Amendment's prohibition by showing that Louisiana waived its sovereign immunity? We find that the Eleventh Amendment covers this motion and that GSK may not avoid its bar.

In addition to this claim, GSK asserts that the District Court abused its discretion in denying Rule 60(b) relief from a final judgment. We find this argument unavailing. On these two grounds, we will affirm.

I.

On July 14, 2008, private indirect purchasers of Flonase, a brand-name prescription drug, sued GSK in the United States District Court for the Eastern District of Pennsylvania. They alleged that: (a) GSK had filed sham citizen petitions with the Food and Drug Administration to delay the introduction of a generic version of Flonase, and (b) this delay forced the private indirect purchasers to pay more for Flonase than they would have if the generic version were available. The private indirect purchasers sued on behalf of themselves and a class of other indirect purchasers. For the purpose of the case at bar, two motions matter.

First, in the primary suit, the private indirect purchasers moved for final approval of settlement on April 1, 2013, after the District Court had certified the class, and had approved of the notice to settlement class members. The State of Louisiana, an indirect Flonase purchaser, qualified as a potential class member but did not receive the approved notice. Instead, it only received a Class Action Fairness Act ("CAFA") Notice. This notice, "serve[d] upon the appropriate State official of

5

each State in which a class member resides," included: (1) "a copy of the complaint," (2) "notice of any scheduled judicial hearing in the class action," (3) "any proposed or final notification to class members," (4) "any proposed . . . class action settlement," and (5) an estimate of the number of class members in each state. 28 U.S.C. § 1715(b) (2012). The notice includes this information because Congress "designed [this notice requirement] to ensure that a responsible state and/or federal official receives information about proposed class action settlements and is in a position to react if the settlement appears unfair to some or all class members or inconsistent with applicable regulatory policies." S. Rep. No. 109–14, at 31 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 32. It made clear, however, that state officials "will not be required" to "get involved." *Id.* at 33.

The requested court order "permanently enjoined" all members of the settlement class, including Louisiana, from bringing released claims against GSK, even in Louisiana's state court. Pls.' Mot. Final Approval Settlement and Plan Allocation, Award Att'ys' Fees, Reimbursement Expenses and Incentive Awards Named Pls. at 9-10, *In re Flonase Antitrust Litig.*, No. CV 08-3301, 2015 WL 9273274 (E.D. Pa. Dec. 21, 2015), ECF No. 574 [hereinafter Motion for Final Approval of Settlement Plan]. The proposed settlement agreement, among other things, provided compensation to the plaintiffs and class members, released the plaintiffs' and class members' claims, "reserv[ed] exclusive and continuing jurisdiction over the Settlement and this Settlement Agreement" for the District Court, and gave GSK the power to enforce the settlement. App. 98–107. On June 19, 2013, the District Court approved the final settlement.

6

Second, in the ancillary suit, GSK filed a motion to enforce the settlement agreement against the Louisiana Attorney General because, according to GSK, Louisiana violated the settlement agreement. In its motion, GSK argued that "Louisiana did not opt-out of the Settlement Class, and thus is bound by the release and covenant not to sue provisions in the Settlement Agreement and Final Order and Judgment." App. 314. As a result, GSK "respectfully submit[ted] that this Court should enjoin the Louisiana Attorney General from further pursuit of claims that were encompassed by the settlement in this litigation." App. 315.

On December 21, 2015, the District Court for the Eastern District of Pennsylvania denied this request and dismissed the case. It held that the Eleventh Amendment covered this enforcement action because, pursuant to the Eleventh Amendment, "a State retains the autonomy to choose 'not merely whether it may be sued, but where it may be sued.'" App. 12 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). *See also* App. 14 ("Even though some of Louisiana's claims fall within the Settlement Agreement, I cannot enjoin Louisiana unless the State has waived its sovereign immunity and consented to this Court's jurisdiction."). It then held that "Louisiana's receipt of the CAFA Notice is insufficient to unequivocally demonstrate that the State was aware that it was a class member and voluntarily chose to have its claims resolved by the Settlement Agreement." App. 17.

Shortly before the District Court decided GSK's motion to enjoin Louisiana's state court action, GSK moved pursuant to Rule 60(b)(2) for Relief from a Judgment or Order because of newly discovered evidence that a third party had allegedly submitted a settlement claim on behalf of Louisiana. On May

7

31, 2016, the District Court denied this motion. GSK appealed the December 21 and May 31 orders.

## II.

Because we review the District Court's final decisions, we exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. "Dismissal of an action based upon sovereign immunity is subject to plenary review by this Court." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996). "We review the denial of Rule 60(b) relief for an abuse of discretion." *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002).

## III.

The District Court: (a) properly granted Louisiana's Motion to Dismiss, (b) appropriately denied GSK's Motion to Enforce Class Settlement, and (c) did not abuse its discretion in denying GSK's Rule 60(b) motion. As a result, we will affirm.

This case turns on whether the District Court exercised jurisdiction over Louisiana in the primary suit. A private party may bring a suit against a state official to enforce a settlement agreement despite the Eleventh Amendment. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004). To enforce a settlement agreement, a private party must draw upon a federal court's ancillary jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–80 (1994). "Ancillary jurisdiction may extend to claims having a factual and logical dependence on the primary lawsuit, but that primary lawsuit must contain an independent basis for federal jurisdiction." *Peacock v. Thomas*, 516 U.S. 349, 355 (1996) (internal quotation marks

8

and citation omitted). As a result, GSK may not draw upon the District Court's powers of ancillary jurisdiction unless the District Court properly exercised jurisdiction over the State in approving the settlement agreement. In approving the settlement agreement, the District Court lacked jurisdiction over the State because the Eleventh Amendment applies to the primary case and because Louisiana did not waive its sovereign immunity in that case.

A.

The Eleventh Amendment applies to the primary suit. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The Supreme Court has defined a "suit" as "the prosecution, or pursuit, of some claim, demand, or request" and regarded "commenced or prosecuted" as follows: "By a suit commenced by an individual against a State, we should understand process sued out by that individual against the State, for the purpose of establishing some claim against it by the judgment of a Court; and the prosecution of that suit is its continuance." *Cohens v. Virginia*, 19 U.S. 264, 407–08 (1821). "[A] suit is *against* the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102 n. 11 (1984) (internal quotation marks and citation omitted) (emphasis added).

9

In *Missouri v. Fiske*, the Supreme Court found that the Eleventh Amendment applied to a motion to enjoin a state from suing in its own court. 290 U.S. 18, 26 (1933). The Supreme Court came to this conclusion because the Eleventh Amendment covers claims that seek equitable remedies and because the private party's motion to enjoin the State from suing in its own court qualified as a suit that sought an equitable remedy. *Id.* at 27.

Like the private parties in *Fiske*, the private parties here sought an equitable remedy against a State. In their motion for final approval of settlement, the private indirect purchasers asked the District Court to order that "all members of the Settlement Class[, including Louisiana,] . . . are hereby permanently enjoined" from bringing any of the released claims against GSK "in any state or federal court . . . ." Motion for Final Approval of Settlement Plan at 9–10. Because *Fiske* held that the Eleventh Amendment covers a motion to enjoin a state from suing in its own court and because the motion for final settlement approval sought to enjoin Louisiana from suing in its own court, the Eleventh Amendment covers the motion for final approval of settlement at issue here.

Procedurally, *Fiske* differs from the case at bar in two respects. Neither distinction, however, undermines *Fiske*'s utility or applicability. First, the States played a different role in each claim. In *Fiske*, the private parties sought an injunction against a state that acted as an intervening defendant. 290 U.S. at 23–24. Here, private parties sought an injunction against a state that acted as an absent class member.

This distinction between the States' procedural titles does not make *Fiske* less useful. The Supreme Court has instructed us to focus on the nature of the claim's requested

relief, as opposed to the "mere names of the titular parties," *In re New York*, 256 U.S. 490, 500 (1921), and, "in the context of lawsuits against state and federal employees or entities," the Supreme Court has ruled that "courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017). To make this decision, "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.* at 1290. If we must look beyond "the characterization of the parties in the complaint" and, instead, scrutinize the requested remedy's effects to ensure that it does not infringe upon an unnamed sovereign's immunity, we should surely adopt the same approach here when considering whether a claim implicates the rights of a state acting as an absent class member. *Id.*

Second, the private parties sought equitable relief in different types of motions. In *Fiske*, the private parties filed an "ancillary and supplemental bill of complaint," *Fiske*, 290 U.S. at 24, and requested "the equitable remedy of injunction against the state." *Id.* at 27. Here, the private parties asked for the approval of a settlement agreement in which the state was "hereby permanently enjoined . . . ." Motion for Final Approval of Settlement Plan at 9.

The specific name of the vessel requested to carry the injunction does not distinguish *Fiske* from the case at bar. The Supreme Court has acknowledged a consent decree's hybridity. On the one hand, "[a] consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992). On the other hand, "it is an

11

agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Id.* Because of this ambiguity, the Supreme Court has established a rule to determine whether a settlement agreement carries the force of federal law and has held that a settlement agreement becomes enforceable federal law when it: (a) receives a federal court's approval, (b) "springs from a federal dispute," and (c) "furthers the objectives of federal law." *Hawkins*, 540 U.S. at 438.

As GSK concedes, this settlement agreement "was functionally a consent decree" that "federal courts may enforce." Appellant's Br. at 35. As a result, *Fiske* applies even though the private parties in *Fiske* requested an injunction in the form of a court order—as opposed to in the form of a court approved settlement agreement.

Another court of appeals has come to a similar conclusion, albeit in a slightly different situation. In *Thomas v. FAG Bearings Corp.*, the Eighth Circuit found that "the Eleventh Amendment bars involuntary joinder of" a state because "[i]nvoluntary joinder will compel [the state] to act by forcing it to prosecute [a private party] at a time and place dictated by the federal courts." 50 F.3d 502, 505 (8th Cir. 1995). The Eighth Circuit supported its conclusion by noting that "[p]ermitting coercive joinder also undermines the two aims of the Eleventh Amendment: protection for a state's autonomy and protection for its pocketbook." *Id.* at 506. According to our sister circuit, a contrary ruling would undermine the Amendment's aims by: (a) allowing a private party to waive a state's sovereign immunity, and (b) compelling "[p]remature litigation [that] potentially limits the

12

costs [the state] can recover." *Id.* These same concerns motivate our decision today.

GSK preemptively questions our holding by citing three Supreme Court cases that held that the Eleventh Amendment did not cover a private party's suit involving a state. In the first case, *Cohens*, the Supreme Court held that the Eleventh Amendment did not cover a criminal defendant's appeal from a state court to the Supreme Court of the United States on a writ of error. 19 U.S. at 407–08. In the second case, *California v. Deep Sea Research, Inc.*, the Supreme Court found that the Eleventh Amendment did not apply to an *in rem* complaint over a sunken ship that the State of California claimed as its own after the private party filed the *in rem* suit. 523 U.S. 491, 496 (1998). In the third case, *Tennessee Student Assistance Corp. v. Hood*, the Supreme Court held that the Eleventh Amendment did not apply to discharge orders in *in rem* bankruptcy proceedings even though a state agency had guaranteed the allegedly dischargeable loan. 541 U.S. 440, 449 (2004).

In addition to these Supreme Court cases, GSK relies on three sister circuit cases that held that motions to remove or transfer did not implicate the Eleventh Amendment. *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 845, 848 (9th Cir. 2004) (observing that "*Cohens* counsels strongly that removal does not constitute the commencement or prosecution of a suit" and holding that "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction"); *Okla. ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1240 (10th Cir. 2004) ("We hold that the State may not assert its Eleventh Amendment immunity to preclude defendants' removal of the

13

tort action it brought against them in its own courts."); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (finding "that the Eleventh Amendment does not deprive the Indiana district court of jurisdiction in this case" because "it does not involve any claim or counterclaim against [the state] that places [the state] in the position of a defendant").

We distinguish these Supreme Court and sister circuit cases from the case at bar because none of the private parties in the cases cited by GSK sought legal or equitable remedies *against* the State. Indeed they sought a writ of jurisdiction that "acts only on the record," *Cohens*, 19 U.S. at 410, a removal notice that was not "dissimilar" from a writ of jurisdiction, *Dynegy*, 375 F.3d at 845,[1] a transfer motion that "does not involve any claim or counterclaim *against*" the State, *Eli Lilly & Co.*, 119 F.3d at 1565,[2] an *in rem* admiralty action where the "the possession of the" sovereign was not "invaded under process of the court," *Deep Sea Research*, 523 U.S. at 507, and an *in rem* bankruptcy determination not "seeking to recover

---

[1] GSK unsuccessfully sought to remove Louisiana's state court case to the United States District Court for the Middle District of Louisiana. Ruling and Order, Louisiana *v. SmithKline Beecham Corp.*, No. 15-cv-00055 (M.D. La. Feb. 4, 2015), ECF No. 38. As GSK's counsel conceded at Oral Argument, this issue is not before us.

[2] While the removal notice was pending in the Middle District of Louisiana, GSK futilely tried to transfer the case from the Middle District of Louisiana to the Eastern District of Pennsylvania. *Louisiana v. SmithKline Beecham Corp.*, No. 15-cv-00055, (M.D. La. Feb. 4, 2015), ECF No. 36.

14

property in the State's hands," *Hood*, 541 U.S. at 441–42. As a result, we conclude that the Eleventh Amendment applies here.

B.

The Eleventh Amendment prevented the District Court from issuing an injunction against Louisiana because Louisiana did not waive its sovereign immunity. A suit may avoid the Eleventh Amendment's broad prohibition in three ways. "First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment— an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance. Second, a State may waive its sovereign immunity by consenting to suit." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (internal citation omitted). Third, a private party may sue a state official to prevent the official from violating federal law. *Ex parte Young*, 209 U.S. 123, 159–60 (1908). GSK argues that Louisiana waived its sovereign immunity. We disagree.

The State of Louisiana did not waive its sovereign immunity by receiving a CAFA notice and by failing to oppose the settlement based on that notice. A state waives its immunity "if the State makes a 'clear declaration' that it intends to submit itself to our jurisdiction." *Coll. Sav. Bank*, 527 U.S. at 675–76 (citation omitted). The law "requir[es] a 'clear declaration' *by the State* of its waiver" to ensure "that the State in fact consents to suit" and because "there is little reason to assume actual consent based upon the State's mere presence in a field subject to congressional regulation." *Id.* at 680.

15

In *College Savings Bank*, a private party sued a state for infringing upon a patent. *Id*. at 671. The private party argued that the Eleventh Amendment did not bar the suit because the State "constructively waived its immunity from suit by engaging in the voluntary and nonessential activity . . . after being put on notice by the clear language of the [Act] that it would be subject to . . . liability for doing so." *Id.* at 680. The Supreme Court rejected this argument and found that the State did not voluntarily consent to federal jurisdiction by engaging in "voluntary and nonessential activity" because "[t]here is a fundamental difference between a State's expressing unequivocally that it waives its immunity and Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity." *Id.* at 680–81.

In *Lapides v. Board of Regents of University System of Georgia*, the Supreme Court applied this test and came to a different conclusion. 535 U.S. 613, 620 (2002). In that case, a private party sued a state official and the State removed the case to federal court. *Id.* Once in federal court, the state claimed sovereign immunity. *Id.* The Court observed that *College Savings* did "require[] a 'clear' indication of the State's intent to waive its immunity" and held that "[t]he relevant 'clarity' here must focus on the litigation act the State takes that creates the waiver. And that act—removal—is clear." *Id.*

In light of *College Savings Bank* and *Lapides*, Louisiana did not clearly indicate its intent to waive its sovereign immunity in the primary suit. It received a CAFA notice. That notice may not "impose any obligations, duties, or responsibilities upon . . . State officials." 28 U.S.C. § 1715(f). After it received this notice, it did not act, in its capacity either

16

as a litigant, as was the case in *Lapides*, or as a market participant, as was the case in *College Savings Bank*. As a result, we reject GSK's argument and hold that Louisiana did not waive its sovereign immunity in the primary suit by merely receiving a CAFA notice and failing to act.

GSK attempts to refute this argument in three ways. We find none of them persuasive. First, it attempts to distinguish *College Savings Bank* by arguing that *College Savings Bank* announced "the test for whether States consented to federal jurisdiction by enacting statutes or otherwise engaging in non-litigation conduct that Congress specified would abrogate immunity" and that *Lapides* "governs whether a State's litigation conduct waives immunity." Appellant's Reply at 18. This argument lacks merit because the Court decided *Lapides* and *College Savings Bank* under the same rule. Indeed, in *Lapides*, the Court observed that *College Saving Bank* "required a 'clear' indication of the State's intent to waive its immunity" and concluded that, in *Lapides*, "that act—removal—is clear." *Id.* at 620.

Second, GSK argues that "Louisiana cites no authority suggesting that only affirmative litigation acts can waive immunity." Appellant's Reply at 19. This characterization misconstrues Louisiana's argument. Louisiana does not argue that only affirmative litigation acts can waive immunity. Instead, it argues that a state cannot waive its immunity merely by receiving notice and failing to act. Appellee's Br. at 23 ("Sovereign immunity . . . requires something more than silence or inaction before a state can be bound by a federal proceeding."). This distinction matters because, as explained above, *College Savings* supports the State's actual position.

17

Third, GSK asserts, without citation, that "it does not follow that sovereign immunity must afford States more protection against becoming absent class members than what ordinary litigants receive under Rule 23." Appellant's Reply at 19. It reasons that States should not receive more protection because "States are far more sophisticated than ordinary litigants, and understand the significance of litigation conduct far better." *Id.* at 19. This argument misses the point. The Constitution requires more protections for States than for ordinary litigants not because of their sophistication but because of their status as sovereigns. *P.R. Aqueduct & Sewer Auth.*, *v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity."). Analogizing states to private parties and comparing their respective sophistication ignores this justification. As a result, we find that Louisiana did not waive its sovereign immunity when it received a CAFA notice and failed to act.

C.

The District Court did not abuse its discretion in denying GSK's Rule 60(b) motion. In its briefing before the District Court, GSK expressed its belief that another organization could have filed a claim on behalf of the State of Louisiana. Because of this suspicion, it asked the claims administrator to inform GSK of any claims submitted on Louisiana's behalf. The claims administrator refused and cited its commitment to confidentiality to justify its decision. After the District Court had denied GSK's motion to enforce the settlement agreement, GSK learned that an organization, Humana, had submitted a claim on behalf of Louisiana. Based on this information, GSK then moved pursuant to Rule 60(b)

18

on the theory that it had discovered new evidence. The District Court denied this motion.

The District Court did not abuse its discretion in denying this motion. A "court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60. "That standard requires that the new evidence (1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial." *Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995).

The District Court found that GSK had not carried its burden under the second prong because it did not prove that it could not have discovered this information with reasonable diligence. It came to this conclusion because GSK did not draw on the Court's power to recover the discovered information and because GSK did not show that it could not have received this information with a court order. GSK has not cited a case to support its position that reasonable diligence requires less than a court order. As a result, the District Court did not abuse its discretion in denying this motion.

IV.

The Eleventh Amendment applies to the settlement agreement and the instant enforcement action. GSK may not avoid the Eleventh Amendment's prohibition. Additionally, the District Court did not abuse its discretion in denying GSK's

Rule 60(b) Motion.  For the foregoing reasons, we will affirm the District Court's orders.